IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEFINED SPACE, INC.,　　　　　　　　　）　　JURY DEMANDED
an Illinois corporation,　　　　　　　　　）
　　　　　　　　　　　　　Plaintiff,　　）　　NO
-vs-　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）　1:10-cv-03297
LAKESHORE EAST, LLC,　　　　　　　　）　Judge Joan B. Gottschall
an Illinois limited liability company,　　　　）　Magistrate Judge Sidney I. Schenkier
MAGELLAN DEVELOPMENT GROUP,　　）
LLC, an Illinois limited liability company,　）　　F I L E D
NNP RESIDENTIAL, LLC, an Illinois　　）
limited liability company,　　　　　　　　）　　MAY 2 8 2010
and DOE I through DOE V,　　　　　　　）
　　　　　　　　　　　　　Defendants.　）　　MICHAEL W. DOBBINS
　　　　　　　　　　　　　　　　　　　　　　CLERK, U.S. DISTRICT COURT

## COMPLAINT

Plaintiff, DEFINED SPACE, INC., by its attorney, MARK H. BARINHOLTZ, P.C.,

complains against defendants, and each of them jointly and severally, and alleges:

### Jurisdiction and Venue

1.　　This action arises under the Copyright Act of 1976, as amended, 17 U.S.C. § 101,

*et seq.* This Court has jurisdiction over this case under 28 U.S.C. § 1338(a) and (b), § 1367, and

§ 1400(a). Venue is properly laid in this District under 28 U.S.C. § 1391(b) and (c).

### Parties

2.　　Plaintiff DEFINED SPACE, INC. ("DSI"), is an Illinois corporation, the firm

through which David B. Seide, an experienced professional photographer, conducts his business.

DSI is located in Chicago. As a commercial photographer, Seide concentrates in the creative

portrayal of architectural subject matters. "*Defined Space*" is also a trade name of Seide's business

and a designation which he uses as a means of source identification for his photography.

3.　　Defendant, LAKESHORE EAST, LLC ("LSE") is, upon information and belief, an

Illinois limited liability company, located in Chicago, and has at all times relevant been engaged in

the business of real estate development, sales and marketing. LSE owns and operates a series of

luxury residential high-rises and townhomes along Chicago's lakefront.

4.      Defendant, MAGELLAN DEVELOPMENT GROUP, LLC ("MDG") is, upon information and belief, an Illinois limited liability company, located in Chicago. MDG has, at all times relevant, been engaged in the business of real estate development and sales. On information and belief, MDG, together with LSE, produced the Lakeshore East series of luxury high-rise residential buildings and townhomes along Chicago's lakefront.

5.      Defendant, NNP RESIDENTIAL, LLC ("NNP") is, upon information and belief, an Illinois limited liability company, and has at all times relevant been engaged in the business of managing real estate. On information and belief NNP, together with MDG, manages Lakeshore East lakefront properties.

6.      Upon information and belief, LSE, MDG and NNP (collectively "the Developers"), were, at all times relevant herein joint venturers, confederates operating in concert with one another, and/or acting as agents of each other, in doing the acts hereinafter alleged.

7.      On information and belief, one or more persons and/or firms whose identities and/or roles in connection with the circumstances complained of herein are not fully known or disclosed to plaintiff as of the filing of this action, are herein named as defendants DOE I through DOE V, and are either affiliated with or otherwise directly or indirectly supervised, participated in or financially benefitted from the unlawful acts described herein below.

## Background

8.      At or about May 2005, Seide was contacted by LSE personnel who, on behalf of the Developers, requested Seide provide photographic services to create imagery, and to license certain of the photographs created thereby, or to be created, depicting the multi-million dollar high-rise complex located just North of Millennium Park between Randolph Drive and the Chicago River, known as the Lakeshore East neighborhood. ("Lakeshore East")

9.      Further to that request, Seide created a series of color photographs depicting buildings, landscapes and neighborhood views of the Lakeshore East development. ("the Works")

Copies of certain of the Works are attached hereto (in B&W) as group Exhibit "A".

10.     As of the filing of this action (the "Lawsuit"), there is a subset of the Works which, to the best of DSI's knowledge at the present time, comprise Works which have been infringed by the Developers. (the "Infringed Works") Copies of the Infringed Works are attached hereto (in B&W) as group Exhibit "B".

11.     At all times relevant, particularly after approximately July 2005 Seide, although maintaining ownership of the copyright rights therein, has made his Works, including the Infringed Works, available for use through DSI, exclusively for its business purposes. In addition, Seide has made his own name and identity available through DSI for use as a means of identifying the source and goodwill to be associated with the creation of photographic imagery.

12.     When creating and submitting the Works for reproduction and use by the Developers, DSI communicated conditions for use and license of such imagery, and it was then and there and at all times relevant, understood and agreed by the Developers, that use of each Work(s) be limited to reproduction by certain grantees only (*ie.* the Developers and several others directly involved in the Lakeshore East development), and were to be used for such Developers' marketing, sales and Web site purposes, some for limited times only, to promote sales and rentals in the Lakeshore East properties.

13.     It was further understood and agreed by the Developers that the aforesaid license was conditioned upon authorship and source attribution of the photographic images in Seide and *Defined Space* with a credit line to prominently and clearly identify David B. Seide and *Defined Space* as the creator and source of the photographic Works, with an adjacent copyright notice.

14.     It was further understood and agreed by the Developers that, other than the aforesaid license, the authorship and copyright ownership, and all copyright rights, title and interest in the Works, would remain exclusively with Seide, or as he may designate.

15.     At or about Summer 2005, Seide created the majority of Works at issue in the Lawsuit, and made them available to the Developers, pursuant to the foregoing license. At several

3

other occasions during 2006 through 2008, Seide created and made available to the Developers several more works which, as of the filing of the Lawsuit, are undetermined as to violations.

16.     Each Work was intended by DSI, and used by the Developers, to creatively present the Lakeshore East development, depicted for the promotional purpose of generating interest in them in order to drive sales and/or rentals of the multi-million dollar properties.

17.     At times, various of the Works contributed by DSI, attributed copyright authorship, ownership and/or source identification for the photographs immediately following or adjacent to the reproduction of the images, as the Developers had agreed. A copy of one such credit attribution as it appears in association with a cover story promoting the Developers' Lakeshore East (in B&W), is attached hereto as group Exhibit "C".

18.     Each of the Works, including the Infringed Works, contain substantial material wholly original with Seide, and constitute copyrightable subject matter under the copyright laws of the United States of America.

19.     From time to time, DSI called to the Developers' attention the fact that the agreed upon authorship credit and copyright notice had been omitted from various of the print and Web site uses for the Works. Although the Developers complied from time to time in correcting the omissions, a substantial number of violations of the parties' licensing arrangements accumulated.

20.     At or about Summer 2009, it appeared that the Developers, through their extensive use of the Works in print and Web site media, had caused or contributed to cause:

A.     certain of the Works to be reproduced and used without the accompanying authorship credit and/or copyright notice which the Developers had agreed would accompany each use of the images (the "DMCA violations"); and

B.     with respect to the Infringed Works, the Developers were allowing such imagery to be copied and infringed by various means, including but not limited to, (i) by displaying and reproducing copies of the Infringed Works outside the scope of the time period allowed for such usages, (ii) by displaying and reproducing copies of the Infringed Works outside the

scope of the type of medium allowed for such usages, and (iii) by disseminating such reproductions of the Infringed Works worldwide via the Internet and otherwise (the "Infringing Uses"), but without any permission or authorization from DSI.

21.     That the defendants' Infringing Uses of the Infringed Works, or such of them as are known to plaintiff as of the filing of this Lawsuit, were and are (at least as recently as August 2009) concentrated on and emanate from the Developers' Web sites and various printed materials visually, prominently and are thereby calculated to serve creative and promotional goals for the Developers, namely, as a means of attracting attention and driving sales and rentals of the Lakeshore East properties. Copies of certain Works, including Infringed Works as they appear(ed) on several of the Developers' Web sites (but in B&W), are attached hereto as group Exhibit "D".

22.     At all times relevant, the results of DSI's photographic services, including the use of the Infringed Works, were carefully selected by the defendants to have significant impact and emphasis, and to serve as a catalyst to enhance sales and rentals, desired to be exploited by said defendants, and all as a means to multiply their own economic gain.

23.     In addition, DSI has become aware that defendants, by their failure to obtain DSI's permission, have evidenced their intentions to, and have in fact, *inter alia*, improperly miscredited (*see* Exhibit "E" hereto) or otherwise omitted to attribute authorship and source of the Works in Seide or *Defined Space*, by widespread dissemination of the Works, including the Infringed Works in the Infringing Uses, and otherwise, only after deliberately removing the photo credit, copyright notice and other source information that Seide and *Defined Space* had bargained for, and/or altering same in such a manner as to create the misleading impression that Developers were the authors of such Works.

24.     Seide has complied with all registration and deposit requirements of the federal copyright laws, and has applied for copyright registration for each of his copyrighted Works at issue here, and has submitted a completed application, together with copies of the Works in question and the necessary fee, the receipt of which have all been acknowledged by the United

States Copyright Office. A copy of the delivery confirmation of the pertinent application for copyright registration to the Copyright Office is attached hereto as Exhibit "F".

## COUNT I
### (Title 17 U.S.C. § 1202, Digital Millennium Copyright Act)

25.     Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 24 hereof, and for this Count I alleges against defendants, and each of them jointly and severally, as follows.

26.     From time to time, various of the Developers' uses of the Works, including the Infringed Works, attributed copyright, authorship and/or source of the photographic Works in Seide and/or *Defined Space*. Thus, defendants knew or had reasonable grounds to know that Seide (and *Defined Space*) was the true copyright owner, author and/or source of those Works.

27.     The Works submitted to the Developers were embodied within disks (CD-ROMs) containing digital files which were encoded with various items of information embedded in the metadata of such files.  The digital files embodying the photographs conveyed information, including but not limited to the title of the individual image, Seide's name and the trade name "*Defined Space*" and a copyright notice, *inter alia*, as means of identifying Seide and *Defined Space* as the copyright owner, author and source of the imagery. ("the identifying information")

28.     In addition to the digital data, each CD-ROM itself was conveyed to the Developers with various items of identifying information hand-printed on the CD-ROM disks, and on printed inserts otherwise visible through the CD-ROM container cover. (*See*, Exhibit "G" hereto.)

29.     That the name "David B. Seide" and the designation "*Defined Space*," the copyright notice, as well as other identifying information were at all times relevant, conveyed in connection with the Works, including the Infringed Works, to the Developers with the intent by DSI that such information be used to identify the creator and owner of the photographic images and copyrights therein, and otherwise to identify the source of the Works, including the Infringed Works.

30.     That pursuant to 17 U.S.C. § 1202(c) of the Digital Millennium Copyright Act of

6

1998 ("DMCA") the identifying information so conveyed is deemed to be and constitutes "copyright management information" under the Copyright Act of the United States.

31.     That defendants, and each of them, had agreed and had knowledge or reasonable grounds to know that DSI intended such copyright management information to be faithfully reproduced in connection with any reproduction of the Work(s), including the Infringed Works.

32.     Notwithstanding defendants' knowledge, however, at various times relevant, the Internet postings of the Works, and other print reproductions thereof, including but not limited to the Infringing Uses, removed the name "David B. Seide" and/or the trade designation *"Defined Space,"* and stripped out and/or scrubbed away, or materially altered or modified, virtually all other copyright management information which was encoded within the metadata contained in the digital files delivered to the Developers.

33.     As a substitute, the Developers altered and otherwise provided false or misleading copyright management information by claiming, or reworking the metadata to misleadingly suggest, copyright and source in the name of defendants or as "LSE," and otherwise deliberately omitted and removed Seide's name, and/or the trade name *Defined Space* entirely, from being connected with the Works, including the Infringed Works, as used on the Developers' various Web site(s) and in promotional brochures and other printed matter.

34.     That in addition to removing and altering copyright management information aforesaid, defendants and each of them distributed or imported for distribution, or otherwise publicly displayed, the altered copyright management information knowing, or with reasonable grounds to know, that it had been altered and/or removed without the authority of the copyright owner (Seide) or the law. Further, the defendants, and each of them distributed or imported for distribution, or otherwise publicly displayed, copies of the Works, including the Infringed Works, knowing, or with reasonable grounds to know, that copyright management information had been removed or altered without the authority of the copyright owner (Seide) or the law.

35.     That at all times relevant, defendants and each of them, in doing the acts and things

7

complained of herein, intentionally and/or recklessly induced, enabled, facilitated or concealed an infringement and violation of Seide's and *Defined Space's* copyright attribution, integrity and ownership rights under Title 17 U.S.C. § 1202(a) and §1202(b) (Chapter 12), and otherwise against unauthorized copying, dissemination and display of Works, *inter alia,* under Title 17 U.S.C. § 501 (Chapter 5).

36.     That defendants, and each of them, have thereby violated the Digital Millennium Copyright Act, and plaintiff's rights thereunder, and plaintiff has been caused to and has thereby, suffered and sustained substantial financial damage and irreparable harm, for which plaintiff's remedy at law is inadequate.

## COUNT II
## (Title 15 U.S.C. § 1125(a), Lanham Act § 43(a))

37.     Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 36 hereof, and for this Count II alleges against defendants, and each of them jointly and severally, as follows.

38.     That the true, proper attribution of authorship and source of the photographic Works, including the Infringed Works, in Seide and *Defined Space*, was expressly agreed upon between the parties. Moreover, from time to time defendants did credit authorship and/or copyright ownership in Seide and/or *Defined Space*. (*See,* Exhibit "C" hereto.) Thus, defendants knew or had reasonable grounds to know that Seide and/or *Defined Space* was the true and lawful author, copyright owner and source of those Works.

39.     Notwithstanding, however, at all times relevant, the infringing and otherwise unlawful reproductions of the Infringed Works in the Infringing Uses claimed copyright in the name of defendant LSE or the Developers or otherwise deliberately omitted or removed Seide's name, or the trade name *Defined Space* entirely, from being associated with the Works as reproduced in defendants' various Web sites and printed promotional materials.

40.     In addition, defendants, by their deliberate reproduction of the Infringed Works

8

without DSI's permission, evidenced their intentions to do and/or omit to do one or more of the following, *inter alia*: (i) to alter and/or modify the Works, including the Infringed Works, without any input or permission, (ii) to reproduce and publish the Works, including the Infringed Works, without any editorial participation so that the Infringing Uses do not reflect DSI's vision in connection with the selection or manner of use(s) of the photographic Works, and (iii) to tout and/or seek to associate the photographic Works of Seide, including the Infringed Works, their source and/or authorship, and the goodwill thereof, with the trade names, trademarks, and designations "LSE," Lakeshore East, Magellan, and NNP, *inter alia*, and all without the permission, consent, authorization or approval of plaintiff.

41.     In addition, defendants, either intentionally and/or recklessly, caused the Works, including the Infringed Works, to be widely disseminated in derogation of their lawful duties to ensure that Seide's name and goodwill, and that of *Defined Space*, be associated with the Works, including the purposes for which the Works were originally licensed for use.

42.     Consequently, the Infringing Uses and reproductions purport to suggest, *inter alia*, (i) that the lawful copyright owner Seide, through DSI, has endorsed and approved of such selection and use(s) of the Infringed Works, or (ii) that defendants and/or some other person or firm is the creator and copyright owner of the Infringed Works, when in fact those suggestions, impressions and identifications are not true.

43.     Defendants' wrongful use and/or misuse of Seide's name, identity and services, and that of *Defined Space*, and misuse of the entitlement to receive proper photographic authorship and/or source attribution credit, are uses in commerce, and constitute acts of unfair competition and an infringement of plaintiff's common law and statutory rights in Seide's and his firm's name, identity and services.

44.     Defendants have engaged, and/or have threatened to continue to engage, and/or in some cases to resume, in the aforementioned conduct with the intent to deceive the purchasing public and others, or otherwise having the likelihood that such deception will be the result.

9

45.     Defendants' acts have been, and are threatened to be, committed with the intent to pass off defendants' Infringing Uses, and in particular certain of the photographic Works, specifically the Infringed Works, reproduced therein, as being those of defendants and/or as being dissociated from Seide or his firm's identity *"Defined Space,"* and all to the deception of the purchasing public and others in violation of the Lanham Act, § 43(a) thereof.

46.     Defendants' acts, practices and conduct constitute unfair competition, false or misleading designation, description or representation, false advertising, and/or unfair and deceptive trade practices in that they are likely to cause confusion and mistake by the purchasing public and/or others with respect to the professional services of DSI, all in violation of the Lanham Act, § 43(a) thereof.

47.     The aforesaid false and misleading designations and impressions have caused, and are likely to continue to cause, plaintiff irreparable harm and economic injury, for which plaintiff's remedy at law is inadequate.

## COUNT III
### (Statutory Consumer Fraud)

48.     Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 47 hereof, and for this Count III alleges against defendants, and each of them jointly and severally, as follows.

49.     Defendants' aforesaid acts, practices and conduct constitute unfair and deceptive business practices and consumer fraud in violation of the Consumer Fraud and Deceptive Business Practices Act, Illinois Compiled Statutes, 815 ILCS 505/2, § 2.

50.     As a direct and proximate result of the aforesaid acts, practices and conduct, plaintiff is likely to continue to be substantially injured in its business, including its reputation, resulting in lost income and diminished goodwill.

51.     By reason of the foregoing, plaintiff has been and will be injured in an amount not yet ascertained.

10

## COUNT IV
### (Statutory Deceptive Trade Practices)

52.     Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 51 hereof, and for this Count IV alleges against defendants, and each of them jointly and severally, as follows.

53.     Such conduct and acts aforesaid by defendants constitute unfair and deceptive trade practices within the meaning and intendment of the Illinois Compiled Statutes, Chapter 815, Sections 510/2, § 2(2), § 2(3), § 2(5) and § 2(12), thereof.

54.     Plaintiff has no adequate remedy at law, and the aforesaid false and misleading descriptions and misrepresentations have caused, and are likely to continue to cause, plaintiff economic injury and irreparable harm.

## COUNT V
### (Common Law Unfair Competition)

55.     Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 54 hereof, and for this Count V alleges against defendants, and each of them jointly and severally, as follows.

56.     Defendants' aforesaid acts, practices and conduct are likely to cause confusion or mistake in the minds of the purchasing public and others, and constitute common law unfair competition by defendants against plaintiff.

57.     As a direct and proximate result of the aforesaid acts, practices and conduct, DSI has been and/or is likely to be substantially injured in its profession, including it's reputation, resulting in lost income and diminished goodwill.

58.     DSI has no adequate remedy at law in that its name, identity and services, and as further identified with Seide and/or *Defined Space*, are unique and represent to the purchasing public and others DSI's identity, reputation and goodwill, such that damages alone cannot fully compensate DSI for defendants' misconduct.

59.     That the aforesaid false and misleading descriptions and misrepresentations have

11

caused, and are likely to continue to cause, plaintiff economic injury and irreparable harm.

**COUNT VI**
**(Title 17 U.S.C. § 501, Copyright Act Infringement**
**vs. LSE, MDG, and NNP)**

60.     Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 59 hereof, and for this Count VI alleges against the named defendants, and each of them jointly and severally, as follows.

61.     As the firms that own, operate and manage the Lakeshore East properties, defendants have, on information and belief, reserved for themselves and exercise significant rights of control over and/or participation in the development, preparation, design, and distribution of the marketing and promotional efforts pertaining to the sales and rentals of the Lakeshore East properties, including but not limited to copyright protected photographic images and the names and identities of the authors thereof, as well as the financial benefit to be derived therefrom.

62.     At least as early as 2009, and at all times through the filing of this action, defendants, and each of them, infringed the Infringed Works, and the exclusive rights therein, within the meaning and intendment of Chapter 5 of the Copyright Act (17 U.S.C. § 501, *et seq.*), by various means, including but not limited to, the aforesaid reproductions, publications, displays and disseminations of the copyrighted Infringed Works, without having first obtained a license therefor.

63.     Such acts aforesaid by defendants were for their own commercial use and benefit and infringed upon plaintiff's exclusive copyright rights in the Works.

64.     That such copyright infringement(s) aforesaid have continued through the filing of this action, are ongoing and are likely to continue.

65.     That by virtue of the acts hereinabove alleged, defendants have infringed plaintiff's copyright rights, and plaintiff has been caused to and has thereby suffered and sustained irreparable harm and economic injury.

12

## COUNT VII
### (Liability vs. Doe I through Doe V)

66.     Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraph 1 through 65 hereof, and for this Count VII alleges against defendant(s) Doe I through Doe V, as follows.

67.     On information and belief, one or more individual(s), firm(s), affiliate(s) or contractor(s) acted in concert with the Developers or others, and were a conscious, active and/or dominant force causing or contributing to cause, and which resulted in the unlawful infringements and unfair competition herein alleged.

68.     On information and belief, those individuals, firms, affiliates and/or contractors personally or directly contributed to, authorized and/or participated in infringing and/or unfairly competing against the photographic Works, and exclusive rights therein, including rights to attribution and integrity, by the various means aforesaid, *inter alia.*

69.     That such liability of the said DOE defendants may be assessed by the court not only for their direct acts or participation, but on the basis of their contributory acts or vicarious participation in the Infringing Uses or otherwise.

70.     That such tortious acts were for their own individual gain and benefit, as well as the gain and benefit of their firms, affiliates or contractors, and infringed upon and/or unfairly competed against DSI's exclusive copyright rights and attribution rights in the Work(s).

71.     That such infringement and unfair competition aforesaid has continued through the filing of this Lawsuit, is ongoing and is likely and/or is threatened to continue.

72.     That by virtue of the acts hereinabove alleged, defendants DOE I through DOE V infringed DSI's copyright rights and/or unfairly competed against DSI, and he has been caused to and has thereby suffered and sustained irreparable harm and economic injury.

13

**COUNT VIII**
**(Injunction)**

73.     Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 72 hereof, and for this Count VIII alleges against defendants, as follows.

74.     By reason of defendants' aforesaid acts, DSI has suffered, and will continue to suffer, damage to its profession, reputation, and goodwill, unless the court protects DSI from any unauthorized use of its proprietary identity, and that of *Defined Space*, and otherwise against infringements alleged aforesaid.  DSI has over time carefully developed, established, promoted, and preserved the integrity of plaintiff's name and identity, and that of David Seide and the professional services associated therewith, but such integrity will suffer if DSI is unable to protect these substantial proprietary rights. Money damages alone could not adequately compensate DSI for the resulting loss of goodwill established by plaintiff in his profession and with the purchasing public and others.

75.     Defendants continue to do, and to threaten to do, and/or in some cases to resume, the acts complained of by plaintiff and, unless enjoined by the court, defendants will continue to do so, to plaintiff's irreparable damage. The harm to defendants of being ordered to cease their activities with respect to the Infringed Works is not sufficient to justify the damage to DSI of allowing defendants to continue.  There is a strong possibility that DSI will prevail on the merits of this case. Furthermore, it would be extremely difficult, if not impossible, to ascertain the amount of compensation which would afford DSI adequate relief for defendant(s)' acts.  Therefore, DSI's remedy at law is not adequate to compensate for such injuries.

76.     Pursuant to 17 U.S.C. § 1203(b), 17 U.S.C. § 502, and 15 U.S.C. §§ 1116 and 1118, DSI seeks a hearing and the issuance by the court, following such hearing, of a preliminary and ultimately permanent injunction to require defendant(s), *inter alia*, to:

(i)     cease using or taking any further steps to use the copyrighted Work(s) in a misleading fashion, and all other materials of any kind which are identified or

14

associated with Seide, or *Defined Space*, without prior written authorization;

(ii)     cease distributing or taking any further steps to distribute the Infringed Works or other materials which unlawfully omit to properly use the name, identity, copyrighted Works, and all other materials of any kind which are or should be properly identified or associated with Seide or *Defined Space*, without prior written authorization;

(iii)    turn over to DSI or destroy all copies of the Infringed Works or portions thereof, scans, prints, displays, Web site data, digital files, and all other related materials of any kind wherein the Work(s) and authorship thereof are misidentified with and/or miscredited to Defendants or some other third person or firm, and all without DSI's prior written approval; and

(iv)     cease making any representations, statements and/or suggestions that the manner in which the Infringed Works are reproduced, and/or credited as to authorship, is in any way approved, endorsed, or licensed by Seide, or *Defined Space*, or identified with Seide, or *Defined Space*, in any manner whatsoever, without prior written consent.

## COUNT IX
### (Attorney Fees & Exemplary Damages)

77.     Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 76 hereof, and for this Count IX alleges against defendants, as follows.

78.     Plaintiff seeks to recover the cost of enforcement of this legal action, in part including attorney fees, and exemplary damages, on the grounds hereinafter alleged.

79.     That despite that knowledge aforesaid, the Developers, acting in concert with various of the DOE defendants, willfully and deliberately engaged in the foregoing infringements.

80.     Defendant(s)' deliberate and willful conduct has required plaintiff to employ legal counsel to file this action for violations including of the Copyright Act and the Digital Millennium

15

Copyright Act of the United States.

81.     That the Digital Millennium Copyright Act, § 1203(c)(3)(B) thereof, provides, *inter alia*, that violation of copyright management information related rights under § 1202 is punishable by an award of statutory damages in amounts up to and including $25,000.00 for each violation.

82.     In addition, for the violation of the DMCA's copyright rights in copyright management information under 17 U.S.C. § 1202 as allowed pursuant to 17 U.S.C. § 1203, plaintiff is entitled to the recovery of his costs of enforcement, including attorney fees, because the DMCA provides for such relief separate and apart from traditional Chapter 5 infringements under the Copyright Act.

83.     Therefore, Developers, their respective officers, agents and employees who personally or directly contributed to, authorized and/or participated in infringing the Infringed Works and violating the DMCA, and various of the DOE defendants, and each of them jointly and severally, are liable to plaintiff for such reasonable attorney fees, and exemplary damages, incurred in this action as may be allocated to the applicable Work(s) and violations of the DMCA.

84.     In addition, defendants' deliberate and willful conduct has required plaintiff to employ legal counsel to file this action for violations including of the Lanham Act, and the Illinois Unfair and Deceptive Practices Act and for Consumer Fraud.


WHEREFORE, plaintiff, DEFINED SPACE, INC., prays for findings of infringement, and violations of the Digital Millennium Copyright Act and unfair competition, and judgment in its favor and against defendants, and each of them jointly and severally, as follows:

A.     That defendants be required to deliver up to plaintiff or destroy all copies of the Work(s), including the Infringed Works, in all media and versions, and all print media, and electronic and digital files, embodying the copyrighted photographic Work(s), including all printed and electronic versions and other materials embodying or reproducing the Work(s);

B.     That defendants be required to pay to plaintiff such actual damages as plaintiff has

16

sustained in consequence of defendants' infringements, and other unlawful acts, and to account for all gains, profits and advantages derived by defendants therefrom, or such statutory damages for all infringements and wrongs as shall appear proper within the provisions of the copyright, trademark and deceptive practices laws;

      C.     That such damages otherwise assessed be increased if infringements and wrongful acts are found to be committed willfully;

      D.     That exemplary and/or punitive damages be assessed if infringements and acts of unfair competition, and other wrongful acts, including but not limited to consumer fraud and deceptive business practices, are found to be committed knowingly;

      E.     That the Court grant such other and further relief as is reasonable to remedy defendant(s)' wrongful acts by any means, either at law or in equity, including but not limited to injunction, impounding and reasonable disposition of all infringing articles;

      F.     Together with reasonable attorney fees and plaintiff's costs, plus interest.

PLAINTIFF DEMANDS TRIAL BY JURY

DEFINED SPACE, INC., Plaintiff.

By _____
ATTORNEY

ATTORNEYS FOR PLAINTIFF:

Mark Barinholtz
MARK H. BARINHOLTZ, P.C.
55 West Monroe Street
Suite 3600
Chicago, IL 60603
(312) 977-0121

17

# Exhibit "A"



DS0510-014



DS0510-034



DS0510-053



DS0510-054



DS0510-073



DS0510-085



DS0510-131



DS0510-BB



DS0510-C



DS0510-CC5



DS0510-E



DS0510-EE



DS0510-F



DS0510-G



DS0510-I



DS0510-J4



DS0510-M3



DS0510-N14



DS0510-P



DS0510-R



DS0510-Y



DS0510-Z

# Exhibit "B"



DS0510-110



DS0510-116



DS0510-135



DS0510-155



DS0510-222

# Exhibit "C"

# Focus

Architect As Developer

AIA Chicago

CONTENTS

# FOCUS

December 2005

**Communications Director**
Mary Beth Klatt

**Focus Advisory Board**
Thomas Kerwin, AIA
Gigi McCabe-Miele, AIA
Alice Sinkevitch, Hon. AIA
P.K. VanderBeke, AIA
Thomas Zurowski, AIA

FOCUS (ISSN 1071-3700) Vol. 25, No. 11, is published monthly with a combined issue July/August, by AIA Chicago, 222 Merchandise Mart Plaza, Suite 1049, Chicago, Illinois 60654-1001. $30 of each member's dues are allotted as a subscription. Periodicals postage paid at Chicago, Illinois. POSTMASTER: Send address changes to Focus, AIA Chicago, 222 Merchandise Mart Plaza, Suite 1049, Chicago, Illinois 60654-1001.

For advertising rates and schedules, call 312/670-7770.

© 2005 The American Institute of Architects Chicago.
All rights reserved. Reproduction in whole or part without permission is strictly prohibited.

## AIA Chicago
A Chapter of The American Institute of Architects

**2005 Board of Directors**
**President**
Thomas Kerwin, AIA
**First Vice President/President-Elect**
Peter Schlossman, AIA
**Vice Presidents**
Richard Master, AIA
Gigi McCabe-Miele, AIA
**Secretary**
Brett Taylor, AIA
**Treasurer**
Laura Fisher, FAIA
**Past President**
Charles Smith, AIA
**Directors**
David Brininstool, AIA
Gaines B. Hall, FAIA
Thomas F. Hoepf, AIA
Daniel Friedman, Ph.D., FAIA
Christopher Chwedyk, AIA
**Associate Director**
Helen Tsatsos, Associate AIA
**Professional Affiliate Director**
Jeffrey Loyall
**AIA Regional Directors**
Robert I. Selby, AIA
Jonathan L. Fischel, AIA
**AIA Illinois Delegates**
Fred Brandstrader, AIA
Hill Burgess, AIA
Leonard E. Koroski, AIA
Eben Smith, AIA
Robert Woodworth, AIA
Sharlene Young, AIA (alternate)
Mary Brush, AIA (alternate)

**2005 Committee Chairs**
**Working with an Architect**
Robert Sierzega, AIA
**Architects in the Schools**
Curtis Jones, Assoc. AIA

**2005 Knowledge Communities**
**Corporate Architects**
TBD
**Design**
Craig Brandt, AIA
**Design/Build**
Christopher Martersteck, AIA
**Environment**
Robert C. Vagnieres, Jr., AIA
**Architecture for Health**
Robert Schaefer, Jr., AIA
**Historic Resources**
Charles Sejud, AIA
**Housing**
Steven Montgomery, AIA
**Interior Architecture**
Carol LaMar, AIA
**Regional & Urban Design**
Fred Brandstrader, AIA
**Practice Management**
Gregory Battoglia, AIA
**Technical Issues**
Lynette Stuhlmacher, Assoc. AIA
**Young Architects Forum**
Jeff Missad, Assoc. AIA

**Chapter Staff**
**Executive Director**
Alice Sinkevitch, Hon. AIA
**Membership Director/Assistant to the Director**
Phil Rahill
**Program Director**
Joan Pomaranc
**Communications Director**
Mary Beth Klatt
**Financial Manager**
Crystal Gagler
**Public Information Receptionist**
Linda Freeman
**Documents Clerk**
Mary Mnichowicz

**4** Focus on Programs
*Engineered Wood Products*

**7** President's Letter
*Thank You Alice*

**8** News Briefs
*AIA Anniversary in 2007 ■ AIA Chicago Bylaw Change ■ Free Postings at ArchiWire*

**12** Cover Story
*Architect as Developer*


**18** Feature
*Gadgets to Give and Receive*


**21** Notebook
*Brazzaz ■ The Wood at Oaks Grove ■ Construction Lien Law in Illinois*


**24** Calendar


Cover Project: Lake Shore East Development by Loewenberg + Associates
Image: David Seide/www.definedspace.com

DECEMBER 2005  **3**

# Exhibit "D"



Firefox   File   Edit   View   History   Bookmarks   Tools   Window   Help

Lakeshore East, Chicago River, Millennium Park – NNP Residential Apartments

http://nnpresidential.com/the-shoreham/lse.html

AppleMichiganAve   AOL   Free 411   MapQuest   Dictionary   Yahoo!   Free 411   Dictionary   weather ▾   ASMP ▾   Google

# NNP RESIDENTIAL

NNP residential presents *The Shoreham*

## YOUR ULTIMATE CHICAGO RENTAL EXPERIENCE

SEARCH   OUR PROPERTIES   GREEN LIVING   CHICAGO GUIDE   AT YOUR SERVICE   NEWS   COMPANY   CONTACT

shoreham   neighborhood   apartments   amenities   services   contact

Discover the sophistication of The Shoreham at Lakeshore East, 2007 Community of the Year awarded by the National Apartment Association

### Lakeshore East

Lakeshore East is Chicago's newest residential community located where Lake Michigan meets the Chicago River, just north of Millennium Park. Inspired by the traditional urban neighborhood, Lakeshore East intertwines new apartments, condominiums, park homes, shops and recreation. It is in this special corner of Chicago where the everyday conveniences of modern city life being easily with the appeal of neighborhood charm. Current retail establishments include a CVS/Pharmacy in Aqua, Café ReMi, a gourmet Italian cafe and a full service Fifth Third Bank in The Shoreham. Future tenants will include a full size grocery store as the cornerstone for the Village Market.

As the winner of numerous awards including the prestigious 2008 FIABCI International Real Estate Federation Prix d'Excellence Award and the 2002 American Institute of Architecture's Planned Community Award Lakeshore East is an architectural triumph

Photo Gallery

Grab  File  Edit  Capture  Window  Help

http://imagellansells.com/lancaster/

Defined Space    AppleMichiganAve    AOL    Free 411    MapQuest    Dictionary    Yahoo!    Free 411    Dictionary    weather ▾    ASMP ▾    Google    sa ▾

The Landcaster - Magellan Realty LLC

View as Analog
View as Digital

Open Date & Time...

Sunday, August 16, 2009    Sun 5:18 PM    dbseide

(Charged)




Magellan

BUYERS    SELLERS    DEVELOPER CORNER    CHICAGO LIFE    NEWS    ABOUT

## The Landcaster



Modern in design and classic in appeal, the sold out Lancaster, is the first building completed in the Lakeshore East neighborhood. Designed by Loewenberg Architects, The Lancaster provides an assortment of outstanding floor plans and amenities. Located on The Park at Lakeshore East, The Lancaster's incomparable setting provides a traditional neighborhood experience in an unparalleled location. The Lancaster's 29 stories are a blend of sleek exterior design and refined interior spaces with floor-to-ceiling windows that absorb magnificent park, lake, river and cityscape views.

For more information on resale listings at The Lancaster, please call Magellan Realty at 312.664.3434

## Property Listings

Developer units are sold out. Click here to see our reseller units.

## Quick Contact Form

* Required field

*First and Last Name:*

LAKESHORE EAST





Done

# Exhibit "E"

LAKESHORE EAST*

Magellan Development Group is the proud developer of Lakeshore East

*Sign up for our newsletter and property updates for The Shoreline*

Name     Email

**NNP**

javascript://

SEARCH    OUR PROPERTIES    GREEN LIVING    CHICAGO GUIDE    AT YOUR SERVICE    N

© 2009 NNP Residential, Chicago Apartments   info@nnpresid

Site by The Ocean Agency I Site Map

**LSE**

© 2003 LAKESHORE EAST, LLC     I     Sitemap

http://web.archive.org/web/20060516190329/www.lakeshoreeast.com/whatsnew.html

**MD6**

PROPERTIES    NEW CONSTRUCTION    CHICAGO NEIGHBORHOODS    ABOUT

© Copyright 2006 Magellan Realty LLC. All rights reserved. Design by Agent Image - Real Estate Web Design

# Exhibit "F"



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

March 10, 2010

Dear Customer:

The following is the proof-of-delivery for tracking number **861989017395**.

| Delivery Information: | | | |
|---|---|---|---|
| Status: | Delivered | Delivery location: | 9140 E HAMPTON DR<br>20559 |
| Signed for by: | R.WALKER | Delivery date: | Mar 4, 2010 10:27 |
| Service type: | Express Saver Pak | | |

NO SIGNATURE IS AVAILABLE
FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment.
Please check again later for a signature.

| Shipping Information: | | | |
|---|---|---|---|
| Tracking number: | 861989017395 | Ship date: | Mar 1, 2010 |
| | | Weight: | 1.0 lbs/0.5 kg |

Recipient:
LIBRARY OF CONGRESS REGISTER O
101 INDPENDENCE AVE SE
20559 US

Shipper:
DAVID B SEIDE
DEFINED SPACE
225 W HURON ST APT 417
60610 US

Reference                                    LSE GROUP REG PUB 2005

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339

# Exhibit "G"

 # DEFINED SPACE


DS0510-F


DS0510-R


DS0510-Z

www.definedspace.com  T: 312.733.8233  E: info@definedspace.com
© David B. Seide: Defined Space, Chicago



DS0510-LSE

SONY
CD-R                    Recordable  SUPREMAS
                        700MB

© DAVID SEIDE/WWW.DEFINEDSPACE.COM
T: 312.733.8233