UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEFINED SPACE, INC., an Illinois corporation | ) ) ) |
| Plaintiff, | ) Case No. 1:10 CV 03297 |
| v. | ) ) Judge Joan B. Gottschall |
| LAKESHORE EAST, LLC, An Illinois limited liability company, MAGELLAN DEVELOPMENT GROUP, LLC, an Illinois limited liability company, NNP RESIDENTIAL, LLC, an Illinois limited liability company, and DOE I through DOE V, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

Defendants Lakeshore East, LLC, Magellan Development Group, LLC, and NNP Residential, LLC (collectively, the "defendants") have moved to dismiss Counts II–V, VIII, and IX of Defined Space, Inc.'s amended complaint under Federal Rule of Civil Procedure 12(b)(6). The defendants have also moved for a more definite statement with regard to Counts I and VI under Rule 12(e). The defendants' motion to dismiss is denied as to Counts II, VIII, and IX but granted as to Counts III, IV, and V. The defendants' motion for a more definite statement of Counts I and VI is denied.

### I.  BACKGROUND

Defined Space, Inc. (hereinafter, "DSI") is the firm through which professional photographer David B. Seide conducts his business. In 2005, DSI entered into a series of agreements with the defendants to produce color photographs of the defendants' properties. The

defendants planned to use these photographs as part of their marketing campaign to rent and sell their properties. The parties entered into a licensing agreement, in which the defendants agreed not to display DSI's works without attribution. Although the defendants occasionally credited DSI's work to DSI, sometimes they omitted this notice in their uses of DSI's work. DSI called this lack of attribution to the defendants' attention from time to time, but on occasion these omissions of attribution were not corrected.

DSI brought this suit against the defendants seeking relief under the Digital Millennium Copyright Act, 12 U.S.C. § 1202; the Lanham Act, 15 U.S.C. § 1125(a); the Copyright Act, 17 U.S.C. § 501; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, § 2; and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2, § 2(2), (5), (12); for injuries it sustained when the defendants allegedly omitted agreed-upon copyright credit and notice in the republication of images and certain of DSI's images which were posted on the defendants' website. The defendants respond by arguing that most of DSI's claims are preempted by the Copyright Act.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must "tak[e] all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff." *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). Legal conclusions, however, are not entitled to any assumption of truth. *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide "a short and plain

statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, the plaintiff must provide enough factual allegations to state a claim for relief that is not only conceivable, but "plausible on its face." *Id.* at 555, 570; *see Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

In addition, Rule 12(e) enables a defendant to seek "a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A Rule 12(e) motion must identify the "defects complained of and the details desired." *Id*. A motion for a more definite statement should be granted "where the movant cannot reasonably be required to frame an answer or other responsive pleading to the pleading in question." Fed. R. Civ. P. 12(e) advisory committee note. A motion for a more definite statement must "point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). A more definite statement is required in claims involving contracts when the "defendants can only guess [as] to what conduct and

contract(s) [an] allegation refers." *Jackson Nat'l. Life Ins. Co. v. Gofen & Glossberg, Inc.*, 882 F. Supp. 713, 726 (N.D. Ill. 1995); *see also Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.*, No. 08 CV 0111, 2008 WL 1883472 at *5 (N.D. Ill. Apr. 25, 2008).

### III. ANALYSIS

**A. Whether Count II Should Be Dismissed For Failure To State A Valid Lanham Act Claim.**

The defendants argue that Count II of DSI's amended complaint, which alleges a Lanham Act claim, should be dismissed under Rule 12(b)(6) because Count II is preempted by the Copyright Act. The defendants contend that the claim DSI is bringing under the Lanham Act is essentially the same claim as Count VI of the complaint, which alleges copyright infringement for the same underlying acts. The defendants argue that the Lanham Act claim is preempted by the Court's holding in *Dastar v. Twentieth Century Fox*, 539 U.S. 23 (2003). The defendants also cite to *Natkin v. Winfrey*, 111 F. Supp. 2d 1003 (N.D. Ill. 2000), and *Cyber Websmith v. American Dental Ass'n*, No. 09-CV-6198, 2010 WL 3075726 (N.D. Ill. Aug 4, 2010). In response, DSI cites to *Cable v. Agence France Presse*, 728 F. Supp. 2d 977 (N.D. Ill. 2010).

In *Dastar*, Twentieth Century Fox had acquired the exclusive television rights to General Dwight D. Eisenhower's written account of the allied campaign in Europe, "Crusade in Europe." Fox arranged for a production of a television series based upon the book, but did not renew the copyright on the television series when it expired in 1977, leaving the series in the public domain. Dastar then took the original Crusade television series, copied the original beta cam tapes,[1] edited them, and produced a "Campaigns" series that had a new opening sequence, credit

---

[1] The phrase "beta cam tape" refers to the first home video system, Betamax, developed by Sony. For an explanation of the Betamax technology, see *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 422–24 (1984).

4

page, and final closing different from the original "Crusade" series. Dastar then manufactured and sold the Campaigns video set as its own product without giving credit to Fox. *Dastar*, 539 U.S. at 27. Fox brought multiple claims against Dastar, including a "reverse passing off claim" alleging that by not providing proper credit to the Crusade television series, Dastar violated § 43(a) of the Lanham Act by passing off Fox's product as Dastar's own work.

The Supreme Court held that the Copyright Act precluded Fox's claims under the Lanham Act. *Id.* at 34–35. The Court began by noting that:

> The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in . . . commerce against unfair competition." While much of the Lanham Act addresses the registration, use and infringement of trademarks and related marks, § 43(a), 15 U.S.C. § 1125(a) is one of the few provisions that goes beyond trademark protection. As originally enacted § 43(a) created a federal remedy against a person who used in commerce either "a false designation of origin, or any false description or representation" in connection with "any goods or services."

*Id.* at 28–29 (internal citation omitted). The Court reasoned that if "origin" were read to mean the person or entity that authored the material, such a reading would effectively create a system of perpetual copyright as it would force those wishing to use uncopyrighted works in the public domain to credit the original authors or face liability under the Lanham Act. *See id.* at 36–37. Accordingly, this could cause serious practical problems for individuals who sought to use materials in the public domain in as much as discerning the original author of many such materials would require a "search for the source of the Nile and all its tributaries." *Id.* at 35–36. The Court held that as used in the Lanham Act, "origin of goods" refers only to the producer of the tangible product sold in the marketplace—not the person or entity that originated the ideas. *Id.* at 31. Because Dastar was the producer of the tangible product sold on the marketplace,

5

having edited the documentary, there was no "false designation of origin" and the Court dismissed Fox's Lanham Act claim. The Court noted, however, that Fox's claim alleging false designation of origin would have been sustained if Dastar had bought the Crusade videotapes and merely repackaged them as its own. *Id.*

In *Cyber Websmith*, Cyber Websmith alleged that the defendants were operating websites for dental practices comprised of photographs copied directly from Cyber Websmith's copyrighted website templates. *Cyber Websmith*, 2010 WL 3075726, at *1. These copies by the defendants were used in direct competition with Cyber Websmith's business of providing website design and marketing services to dental practices. The court held that the Copyright Act preempted Cyber Websmith's Lanham Act claim.

After finding that the works in question were within the subject matter of the copyright statute, the court asked whether the claims asserted by the plaintiff were merely duplicative of its copyright claims. The court noted that to avoid preemption, an extra element must be incorporated in the claim that changes the nature of the action so that it is qualitatively different from a copyright infringement claim. *Id*. at *2 (citing *Kluber Skahan & Assoc. v. Cordogen, Clark & Assoc., Inc.*, No. 08-CV-1529, 2009 WL 466812, at *10 (N.D. Ill. Feb. 25, 2009)). Although the plaintiffs argued that they had alleged extra elements beyond those required for copyright infringement, the court held that "the assertion of consumer confusion and deception, without more," did not allow the plaintiff to sidestep preemption. *Id.* at *3. Furthermore, the court held that the plaintiff's allegations derived from nothing more than the "inherent misrepresentation that accompanies the unauthorized copying and distribution of another's

copyrighted work." *Id.* For these reasons, the court dismissed the Lanham Act claim from the plaintiff's complaint.

In *Cable*, Cable was an experienced real estate photographer who sold his photographs to a real estate firm, Garrison. *Cable*, 728 F. Supp. 2d at 978. Garrison agreed to limit the use of Cable's works to marketing and to include a credit line prominently and clearly identifying Cable as the creator of the photos. Cable alleged that Agence France Presse ("AFP") caused his images to be copied from Garrison's website and used without his permission in an online photograph database. *Id.* Additionally, Cable alleged that AFP had deliberately removed Cable's photo credit and copyright notice. *Id.* Cable alleged a violation of § 43(a) of the Lanham Act based partially upon the theory that by removing the copyright notice and information, AFP had used a false designation of origin and created the danger that the works at issue would be associated with AFP instead of Cable. *Id.* at 981.

The court rejected AFP's argument that *Dastar* precluded a claim under the Lanham Act. It noted that "the *Dastar* court limited its ruling in one important way—it stated that a claim under § 43(a) 'would undoubtedly be sustained if Dastar had bought some of New Line's Crusade videotapes and merely repackaged them as its own.'" *Id.* at 981 (quoting *Dastar*, 539 U.S. at 31). The court stated, "This is what the plaintiff has alleged—that AFP took the plaintiff's photos and repackaged them as their own without revision." *Id.* Because Cable's Lanham Act claim fit the description of the caveat in *Dastar*, the court declined to dismiss the claim.[2]

---

[2] *But see Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 308 (S.D.N.Y. 2011) (holding that the import of *Dastar* is that an author's sole recourse in copyright for unauthorized use cannot be avoided by shoe-horning the claim into the Lanham Act).

7

Here, the defendants assert that in the wake of *Dastar*, the Lanham Act claim alleged by DSI is preempted by the Copyright Act and should be dismissed. DSI responds by distinguishing *Dastar* as being primarily motivated by the public work nature of the film in question. Additionally, DSI points out that *Dastar* explicitly left open a claim under § 43(a)(1)(B) under the Lanham Act. *Dastar*, 539 U.S. at 38; *see* 15 U.S.C. § 1125 (allowing a party to bring a claim alleging false designation of origin in commercial advertising or promotion). This, DSI suggests, makes *Dastar* wholly distinguishable from the case at hand and therefore it should not preclude DSI's Lanham Act claim.

As illustrated above, courts in this district addressing this issue post-*Dastar* are split.[3] *Dastar* rested heavily on the fact that the materials at issue were in the public domain and had been edited by Dastar prior to redistribution. In contrast, DSI alleges that the defendants appropriated and used its *copyrighted works* without DSI's permission and *without alteration*. Thus, the Supreme Court's admonition that the Lanham Act claim "would undoubtedly be sustained if Dastar had bought some of New Line's Crusade videotapes and merely repackaged them as its own" is directly on point. *Dastar*, 539 U.S. at 31.

Here, as in *Cable*, DSI alleges that the defendants took DSI's photographs and passed them off as their own photographs without revision or proper accreditation. This case does not involve works in the public domain, or the fear of a perpetual copyright regime such as the Supreme Court faced in *Dastar*. *Id* at 37. Nor does it involve an instance where the defendants are alleged to have made modifications to the plaintiff's works before displaying the works. This

---

[3] *Natkin*, upon which the defendants rely, was decided three years before *Dastar* and is thus of limited persuasive value. *See Do It Best Corp. v. Passport Software*, No. 01-CV-7674, 2004 WL 1660814, at *18 (N.D. Ill. July 23, 2004) (declining to dismiss a Lanham Act claim and noting that *Natkin* is of limited persuasive value because it was decided before *Dastar*).

court agrees with the analysis in *Cable* and finds that the facts here cleanly fit within the exception enunciated by *Dastar*. *See Cable*, 728 F. Supp. 2d at 981. Accordingly, this court denies the motion to dismiss the Lanham Act claim.

### B. Whether Counts III, IV, And V Should Be Dismissed As Preempted By The Copyright Act.

The defendants argue that Counts III, IV, and V of DSI's amended complaint, which allege violations of Illinois statutes prohibiting consumer fraud and deceptive business and trade practices, should be dismissed because they are preempted by the Copyright Act. The defendants contend that the claims that DSI is bringing under state law are essentially the same claims as Count VI of the complaint, which alleges copyright infringement for the same underlying acts. The defendants argue that these claims are preempted pursuant to the reasoning of *Natkin* and *Chicago Style Productions, Inc. v. Chicago Sun Times, Inc.*, 728 N.E.2d 1204 (Ill. App. Ct. 2000).

Section 301 of the Copyright Act states:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any state.

17 U.S.C. § 301(a). The Seventh Circuit has developed a two-part test to determine whether a state law claim is preempted by the Copyright Act. First, the court asks whether the work at issue is fixed in a tangible means of expression and whether it falls within the subject matter of copyright. *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996). Next, the court looks to whether the rights asserted are equivalent to any of the rights specified in § 106 of the Copyright Act. *Id.*

9

In *Natkin*, Natkin was a professional photographer who had taken pictures of Oprah Winfrey on the set of her show for approximately seven years. *Natkin*, 111 F. Supp. 2d at 1006. While Natkin did not have a written contract with Winfrey or her studio, he contended that he was an independent contractor and that the pictures he took were for publicity purposes only. *Id.* at 1007. When Natkin's pictures were published in Winfrey's book, *Make the Connection*, Natkin brought a suit alleging violations of Illinois's statute prohibiting consumer fraud, 815 Ill. Comp. Stat. 505/2, deceptive trade practices, 815 Ill. Comp. Stat. 510/2, as well as asserting a claim of Illinois common law unfair competition. *Id.* at 1005. The court held that the plaintiff's state law claims were no more than a re-allegation of the plaintiff's copyright claims as an alternative theory of relief. *Id.* at 1013.

The court reasoned that the works at issue were fixed in a tangible form as photographs and that they fell within the subject matter of copyright. *Id.* at 1014. The court pointed out that while the plaintiffs had been creative in arguing all of the harms they had allegedly suffered, their state law claims were asserting nothing more than a garden variety copyright violation for the defendants' unauthorized use and false claims of copyright in some of the published pictures. *Id.* Additionally, the court noted that the relevant counts did not allege any new facts, but instead just "incorporate[d] all prior factual allegations and state[d] that those facts constitute violations of the respective state laws." *Id.* at 1013 n.6. For this reason, the court granted the defendant's motion for summary judgment and dismissed the state law claims. *See also Cyber Websmith*, 2010 WL 3075726, at *2 (dismissing a state law claim of deceptive trade practices as preempted by the Copyright Act).

In *Chicago Style*, Chicago Style was a production company that prepared a television show about local people and events. *Chicago Style*, 728 N.E.2d at 1205. Chicago Style pitched this idea to the Chicago Sun Times with the intent of tying the show into the newspaper, but the Sun Times informed Chicago Style that it was not interested. Shortly thereafter, the Chicago Sun Times began publishing a series of articles labeled "Chicago Style" that focused on the fine arts. Chicago Style filed a complaint alleging a violation of Illinois's Consumer Fraud Act. *Id*. at 1206 (alleging a violation of 815 Ill. Comp. Stat. 505/1). The Illinois Appellate Court held that the Illinois state law claim was preempted by the federal Copyright Act. The court explained that the allegation of a violation of the state law did not "constitute a qualitatively distinct element that would remove the claim from the scope of copyright." *Id*. Thus, the court dismissed the state law claim as preempted by the Copyright Act.

To begin with, this court finds it uncontroversial that the photographs at issue in this case fall within the subject matter of the Copyright Act. *See* 17 U.S.C. § 102(a)(5) (granting copyright protection to "pictorial, graphic, and sculptural works"). Additionally, this court agrees with the other courts in this district and the Illinois Appellate Court that the rights asserted under Illinois state law in this case are not qualitatively different from the rights conferred under the Copyright Act. *See Cyber Websmith*, 2010 WL 3075726, at *2 (finding a claim under the Illinois Uniform Deceptive Trade Practices Act preempted by the Copyright Act); *Natkin*, 111 F. Supp. 2d at 1014 (finding claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Uniform Deceptive Trade Practices Act, and Illinois common law preempted by the Copyright Act); *Chicago Style*, 728 N.E.2d at 1208 (finding a claim under Illinois Consumer Fraud and Deceptive Business Practices Act preempted by the Copyright Act).

11

Like the plaintiff in *Natkin*, DSI has not alleged any additional facts to support Counts III, IV, and V of its amended complaint. *See Natkin*, 111 F. Supp. 2d at 1013, n.6. The counts incorporate by reference all prior factual allegations and assert that these facts constitute violations of the respective state laws. Counts III, IV, and V therefore merely assert state law grounds of recovery for identical alleged actions by the defendants. For these reasons, this court finds that Counts III, IV, and V of DSI's amended complaint are preempted by the Copyright Act and the defendants' motion to dismiss these counts is granted.

**C. Whether DSI Should Provide A More Definite Statement Of Counts I And VI.**

The defendants have moved for a more definite statement under Federal Rule of Civil Procedure 12(e) with regard to Counts I and VI of DSI's complaint. The defendants contend that each photograph was subject to a different licensing agreement with different terms and conditions. Therefore, without a more definite statement, the defendants argue that they are unable to respond to the complaint because they will not know whether the statute of limitations has run on various potential claims and they will not know whether a claim for a given photograph is settled by that photograph's terms of use.

Motions for a more definite statement are generally disfavored. *Zaragon*, 2008 WL 1883472, at *5; *see also Guess?, Inc. v. Chang*, 912 F. Supp. 372, 381 (N.D. Ill. 1995); *Moore v. Fidelity Fin. Servs. Inc.*, 869 F. Supp. 557, 559 (N.D. Ill. 1994). In *Zaragon*, Zaragon had purchased an insurance policy from Indian Harbor for apartment buildings that Zaragon owned.[4] *Zaragon*, 2008 WL 1883472, at *2. When the apartment buildings were damaged by heavy rain, Zaragon filed an insurance claim with Indian Harbor. *Id.* Indian Harbor denied this claim. *Id.*

---

[4] The parties' business relationship was not confined to the transaction at issue. *Zaragon*, 2008 WL 1883472 at *2.

12

Indian Harbor moved for a more definite statement regarding which insurance contract Zaragon was invoking in seeking relief. *Id.*

The court denied Indian Harbor's motion. The court pointed to the fact that Zaragon's complaint clearly discussed the Indian Harbor insurance policy, the damage to Zaragon's property, and the claims process. *Id.* Additionally, the court noted that Indian Harbor's motions and reply brief indicated that it was "fully aware of which insurance policy [was] at issue in Zaragon's complaint." *Id.* The court pointed out that "if Indian Harbor believes that Zaragon does not meet the relevant legal requirements, it "may raise that issue in a motion for summary judgment." *Id.*

Here, DSI has provided a timeframe for when the works at issue were created. DSI has also attached copies of a subset of works which DSI currently believes comprise the works allegedly infringed upon by the developers. (*See* Am. Compl. at ¶ 10; ECF No. 1 Ex. B.) The defendants respond that DSI has not given them enough information to formulate a response because DSI has not specified the particular contracts for the particular works in question, or the particular dates that the infringement is alleged to have taken place. However, the defendants demonstrate their knowledge of the works at issue by attaching a detailed exhibit illustrating the disparate terms and conditions attached to each of the works. (*See* Defs' Mem.; ECF No. 33 Ex. A.) Between the defendants' records of contracts formed with DSI and DSI's attachment of the pictures it believes are at issue in its complaint, this court finds that the defendants can "reasonably be required to frame an answer or other responsive pleading to the pleading in question." Fed. R. Civ. P. 12(e) advisory committee note. Simply put, the defendants should be able to match up the pictures DSI has attached with the contracts for those pictures. For these

reasons, this court denies the defendants' motion for a more definite statement regarding Counts I and VI of DSI's amended complaint.

### D. Whether Counts VIII And IX Should Be Dismissed As Improperly Pled.

Lastly, the defendants have moved to dismiss Counts VIII and IX of DSI's amended complaint as improperly pled as DSI fails to state an independent cause of action for injunctive relief, attorney fees, and punitive damages. Rather, DSI's amended complaint prays for relief in Counts VIII and IX instead of including those prayers for relief in earlier counts in the complaint.

The defendants do not cite any authority for the proposition that, as a matter of law, requests for remedies *must* be pled as part of earlier causes of action.[5] The Seventh Circuit has "made clear in the past that '[i]t is not the obligation of [the] court to research and construct legal arguments open to parties, especially when they are represented by counsel,' and [has] warned that 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.'" *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) (quoting *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003)). Additionally, this court notes that if Counts VIII and IX were dismissed for failure to state a claim, DSI would undoubtedly request leave to amend the complaint to properly state the prayers for relief within other causes of action. Substantively, this would not change the present posture of this case and would prompt both parties and this court to sift through more paper for little gain. *See Adams v. Jackson*, 218 F.

---

[5] The defendants cite *Indemnified Capital Investments, SA. v. R.J. O'Brien & Assocs.*, 12 F.3d 1406, 1413 (7th Cir. 1993) as an instance where a claim for punitive damages was dismissed because it was not a substantive cause of action. However, this court notes that the court in *Indemnified Capital* clarified its ruling that, "Having dismissed all the other counts, we must also dismiss the punitive damages claim because it fails to state an independent cause of action." *Id*. Here, this court has not dismissed all other counts of the complaint, so the comparison to *Indemnified Capital* is inapposite.

Supp. 2d 1006, 1013–14 (N.D. Ind. 2002) (denying a motion to strike parties when it would not have changed the posture of the case).

Finally, this court notes that the defendants' arguments that DSI has not properly met its burden in showing that a preliminary injunction is necessary are premature. DSI has not yet moved for a preliminary injunction—instead it has merely pled such relief in its complaint. This court will address these arguments on the merits when DSI actually raises the issue. Accordingly, the defendants' motion to dismiss Counts VIII and IX is denied.

### IV. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss Count II of DSI's amended complaint is denied. Counts III, IV, and V of the amended complaint are dismissed as preempted by the Copyright Act. Additionally, the defendants' motion for a more definite statement for Counts I and VI of the amended complaint is denied. Finally, the defendants' motion to dismiss Counts VIII and IX of DSI's amended complaint is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 1, 2011